**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **MELISSA SAHADI,** | : | |
| **Plaintiff,** | : | **Case No.:** |
| **VS.** | : | |
| **CITIZENS BANK, N.A.,** | : | |
| **Defendant.** | : | **December 8, 2020** |
| | | **Jury Trial Demanded** |

**COMPLAINT**

COMES NOW the plaintiff, Melissa Sahadi, by and through her attorneys, Sabatini and Associates, LLC, and for her Complaint, she states:

**PARTIES**

1. Plaintiff, Melissa Sahadi, was and is a citizen of the State of Connecticut.

2. Defendant, Citizens Bank, N.A., was and is a national bank organized under the laws of the United States.

3. Defendant's corporate headquarters is located at One Citizens Plaza, Providence, Rhode Island 02903.

4. Defendant owns and operates bank branches including the branch located at 376 Main Street, Durham, Connecticut 06422.

5. At all times material, plaintiff was an employee within the meaning of the ADA Amendments Act of 2008 (ADAAA).

6. At all times material, defendant was an employer within the meaning of the ADAAA.

7. At all times material, the defendant is an employer within the meaning of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

8. At all times material, defendant is an employer within the meaning of Connecticut's Fair Employment Practices Act.

9. At all times material, plaintiff is an employee within the meaning of Connecticut's Fair Employment Practices Act.

10. At all times material, plaintiff was an eligible employee as that term is defined by the Family and Medical Leave Act of 1993 (FMLA).

11. At all times material, defendant employed fifty (50) or more employees at plaintiff's former worksite for twenty or more weeks in 2018 and 2019 in an industry affecting interstate commerce. Accordingly, defendant is an employer covered by the FMLA.

## JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 and this action is brought pursuant to ADA Amendments Act of 2008 (ADAAA)

13. This Court has personal jurisdiction over the Parties and venue is proper under 28 U.S.C. §1391(b).

14. The Court has pendent jurisdiction over the state law claims.

## GENERAL ALLEGATIONS

15. Defendant employed plaintiff.

16. Plaintiff worked at defendant's Durham, CT bank branch.

17. Defendant hired plaintiff on or about June 30, 2014.

18. Plaintiff's job title was Retail Relationship Banker.

19. Plaintiff was qualified for the job position.

20. Plaintiff's immediate supervisor was James Lynch.

21. In or about April 2019, plaintiff was diagnosed with Stage 1A ovarian cancer.

22. Stage 1A is cancer in one ovary or fallopian tube, but not on the outer surface.

23. Early symptoms of ovarian cancer include abdominal pain or bloating, constipation, increased urination, back pain, fatigue, and heartburn.

24. These symptoms become more severe as ovarian cancer progresses.

25. Left untreated, Stage 1A ovarian cancer causes death.

26. Defendant employs Kevin Vigue.

27. Vigue is a supervisory employee.

28. Defendant employs Burnadean Ducroq.

29. Ducroq's job title is Regional Manager.

30. Plaintiff underwent medical treatment for the cancer including surgery and chemotherapy.

31. The surgery included the removal of plaintiff's right ovary, the tumor, and fluid.

32. Plaintiff had clear cell carcinoma form of ovarian cancer – an extremely aggressive cancer.

33. Plaintiff required a medical leave of absence to undergo the surgery.

34. Plaintiff took a medical leave of absence to undergo surgery.

35. The medical leave of absence started on or about April 13, 2019 and ended on or about June 17, 2019.

36. Plaintiff returned to work at the conclusion of the medical leave of absence.

37. Plaintiff underwent chemotherapy after the surgery.

38. Plaintiff required intermittent leave to undergo chemotherapy and doctor visits.

39. Plaintiff requested FMLA job protected continuous medical leave.

40. Plaintiff requested FMLA job protected intermittent medical leave.

41. The FMLA intermittent leave was in effect through December 10, 2019.

42. Plaintiff received pay raises while employed by Respondent.

43. Plaintiff received positive documented job performance evaluations.

44. Defendant has a documented policy on Performance Improvement Plans (PIP).

45. Defendant labels Performance Improvement Plans as "Grow Plans".

46. Defendant has a practice of issuing Grow Plans to employees to address job performance deficiencies.

47. Grow Plans are intended to (a) formally notify the employee of the specific job performance deficiencies; and (b) provide an opportunity to the employee to correct the job performance deficiencies.

48. Defendant has a documented disciplinary policy.

49. Defendant has used its disciplinary policy to address employee's violations of company policy.

50. On or about November 4, 2019, defendant notified plaintiff that she was being terminated.

51. Defendant told plaintiff that she was being terminated for poor job performance.

52. Defendant had not issued plaintiff a documented warning.

53. Defendant had not issued a Grow Plan to plaintiff.

54. Defendant employs Alex Flanders.

55. Flanders works in the Durham, Connecticut branch.

56. Flanders' job title is Licensed Banker.

57. Flanders had the same branch manager and regional manager as the plaintiff.

58. Defendant issued Flanders a Grow Plan.

59. Upon information and belief, Flanders has not disclosed a disability to the defendant.

60. Defendant replaced plaintiff with an individual who does not have a disability to defendant's knowledge.

61. Any and all non-discriminatory excuses to be offered by defendant to explain the termination decision would be a pretext to mask unlawful disability discrimination.

62. Plaintiff's cancer was chronic within the meaning of the CFEPA.

63. Plaintiff's cancer substantially impaired the operation of a major bodily function including reproduction.

64. Defendant regarded plaintiff as being disabled.

65. Defendant was aware of plaintiff's cancer diagnosis.

66. Ducroq was aware of plaintiff's cancer diagnosis.

67. Defendant was aware that plaintiff received medical treatment for the cancer.

68. Defendant was aware that plaintiff's continuous leave of absence was because she underwent surgery for the cancer.

69. Ducroq was aware that plaintiff took a continuous leave of absence to undergo surgery for the cancer.

70. Defendant was aware that plaintiff was using FMLA intermittent medical leave because of the cancer.

71. Ducroq was aware that plaintiff was using FMLA intermittent medical leave because the cancer.

72. Ducroq was involved in the decision-making process to terminate plaintiff's employment.

73. Prior to 2018, defendant rated plaintiff's job performance as a "3" and a "3 plus".

74. Plaintiff performed duties including the running of the day to day operations, cash balancing, opening and closing of the branch, addressing customer services and complaints, presetting appointments, training and developing co-workers, and assisting other branch locations.

75. Plaintiff wrote a rebuttal to the 2018 job performance evaluation and delivered the rebuttal to the defendant.

76. Plaintiff was seen by her oncologist on April 13, 2019.

77. After waking up from surgery, plaintiff was informed that the removed tumor was malignant.

78. On April 25, 2019, plaintiff received pathology results and was definitively diagnosed with an aggressive form of ovarian cancer called clear cell carcinoma.

79. The ovarian cancer caused plaintiff to suffer immense physical, emotional and mental stress and pain.

80. Plaintiff was symptomatic of the cancer in 2018.

81. Plaintiff underwent chemotherapy and medical treatment from May 30, 2019 through August 22, 2019.

82. Plaintiff returned to work while undergoing chemotherapy and medical treatment.

83. Plaintiff's FMLA intermittent leave was approved through December 10, 2019.

84. Plaintiff applied for and received short term disability benefits from April 20019 through June 17, 2019.

85. On November 4, 2019, Defendant told plaintiff that her last "official" day of employment would be November 15, 2019.

86. Plaintiff offered to work through November 15 but was told by defendant that it would be "to raw of a situation for you [plaintiff] and the customers."

87. Defendant escorted plaintiff out of the branch and prohibited plaintiff from collecting her personal belongings.

88. Defendant told plaintiff that they would be "fedexing" her personal belongings. They never did. Plaintiff never received her personal belongings.

89. In the 2018 performance review, the manager's comments state: "Melissa, congratulations and thank you for a job well done in customer service. The branch and you have shown great improvement thru the year and your final #'s reflect that."

90. Defendant never issued plaintiff a written warning in 2018.

91. Defendant has a practice of issuing written warnings to detail performance deficiencies and necessary steps to improve.

92. Plaintiff consistently hit the sales targets set by the defendant with the exception of two (2) quarters in 2018.

93. Defendant told plaintiff that she was being terminated for poor job performance regarding her sales.

94. Defendant gave other employees performance improvement plans to help the employees to improve their performance.

95. Defendant issued no performance improvement plan to the plaintiff.

96. Defendant made her feel like she was an inconvenience, when plaintiff needed to be out of work because she was sick from the chemotherapy or had a doctor's appointment or blood draw.

97. At times, plaintiff was apprehensive to call out of work when sick because management would become angry at her because they were short staffed.

98. Vigue was aware that plaintiff had cancer.

99. Ducroq was aware that plaintiff had cancer.

100. Any and all excuses to be offered by defendant to explain the termination decision would be a pretext to mask unlawful discrimination and/or retaliation.

101. Plaintiff can perform the essential functions of the job with or without a reasonable accommodation.

102. Plaintiff filed claims against the defendant with the Connecticut Commission on Human Rights and Opportunities (CHRO) on or about December 9, 2019.

103. Plaintiff received a Release of Jurisdiction from the CHRO on September 16, 2020. (attached hereto as Ex.1).

104. Plaintiff filed claims against defendant with the Equal Employment Opportunities Commission (EEOC) on or about December 9, 2019.

105. Plaintiff received a right to sue letter from the EEOC on December 4, 2020 (attached hereto as Ex. 2).

**FIRST COUNT**
**(Disability Discrimination in Violation of the ADAAA)**

1. Plaintiff repeats the allegations in paragraphs 1 through 105 above as if fully incorporated herein.

106. Defendant's actions violate The Americans with Disabilities Act Amendments Act of 2008, which prohibits discrimination on the basis of disability.

107. Defendant, by and through its agents and/or employees, violated the Americans With Disabilities Act, in one or more of the following ways:

(a) In that defendant interfered with plaintiff's privilege of employment on the basis of plaintiff's disability;

(b) In that defendant discriminated against the plaintiff in such a way that it adversely affected her status as an employee;

(c) In that defendant terminated plaintiff's employment;

(d) In that defendant treated the plaintiff adversely different from similarly situated employees;

(e) In that defendant discriminated against the plaintiff for requiring a reasonable accommodation;

(f) In that defendant terminated the plaintiff for requiring a leave of absence notwithstanding the fact the leave of absence was a reasonable accommodation;

(g) In that defendant intentionally discriminated against the plaintiff.

108. As a direct and proximate result of defendant's unequal treatment and discrimination, plaintiff has been deprived of her employment and equal employment opportunities because of her disability.

109. As a further direct and proximate result of defendant's discrimination of the plaintiff, plaintiff has been deprived of income, wages, and benefits.

110. As a further result of defendant's termination and discrimination of the plaintiff, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of her personal and professional reputation, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and non-pecuniary losses.

111. Plaintiff has suffered and will continue to suffer injuries and losses as a result of defendant's wrongful and discriminatory acts.

112. The defendant exhibited reckless indifference to the plaintiff's civil rights by terminating her employment on the basis of her disability.

**SECOND COUNT**
**(Disability Discrimination in Violation of C.G.S. §46a-60(b)(1))**

1. Plaintiff repeats the allegations in paragraphs 1 through 112 above as if fully incorporated herein.

113. Defendant, by and through its agents, servants, and/or employees, violated the Connecticut Fair Employment Practices Act C.G.S. §46a-60a *et seq*. in one or more of the following ways.

(a) In that defendant interfered with plaintiff's privilege of employment on the basis of plaintiff's disability;

(b) In that defendant discriminated against the plaintiff in such a way that adversely affected her status as an employee;

(c) In that defendant treated the plaintiff adversely different from similarly situated employees;

(d) In that defendant terminated plaintiff's employment on account of her disability;

(e) In that defendant intentionally discriminated against the plaintiff;

(f) In that defendant discriminated against the plaintiff for requiring a reasonable accommodation;

(g) In that defendant terminated plaintiff's employment because of the leave of absence due to her disability notwithstanding the fact that the leave of absence was a reasonable accommodation;

(h) In that defendant discriminated against plaintiff on the basis of disability (actual or regarded as); and

(i) In that defendant discriminated against plaintiff on the basis of disability (actual or regarded as) in reckless indifference to her civil rights.

114. As a direct and proximate result of defendant's unequal treatment and discrimination, plaintiff has been deprived of her employment and equal employment opportunities because of her disability.

115. As a direct and proximate result of defendant's discrimination of the plaintiff, plaintiff has been deprived of income, wages, and benefits.

116. As a further result of defendant's termination and discrimination of the plaintiff, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of her personal and professional reputation, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and non-pecuniary losses.

117. Plaintiff has suffered and will continue to suffer injuries and losses as a result of defendant's wrongful and discriminatory acts.

**THIRD COUNT**
**(Failure to Accommodate in Violation of the ADA Amendments Act of 2008)**

1. Plaintiff repeats and re-alleges the allegations set forth above in Paragraphs 1 through 117 as though fully set forth herein.

118. Defendant, by and through its agents, servants, and/or employees, violated the ADA Amendments Act of 2008 in one or more of the following ways.

(a) In that defendant failed to provide the plaintiff with a reasonable accommodation;

(b) In that defendant denied the plaintiff a reasonable accommodation;

(c) In that defendant failed to initiate an interactive reasonable accommodation process with the plaintiff;

(d) In that defendant failed to engage in an interactive reasonable accommodation process with the plaintiff; and

(e) In that defendant effectively denied a reasonable accommodation by terminating plaintiff while she was actively utilizing a reasonable accommodation.

119. As a direct and proximate result of defendant's reasonable accommodation denial, plaintiff has been deprived of work and equal employment opportunities because of his disability.

120. As a further direct and proximate result of defendant's failure to accommodate, plaintiff has been deprived of income and wages, and has been deprived of access of certain benefits to which she was entitled under defendant's employee benefits plan, and interest.

121. As a further result of defendant's failure to accommodate, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of her personal and professional reputation, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and

non-pecuniary losses.

122. Plaintiff has suffered and will continue to suffer injuries and losses as a result of defendant's wrongful and discriminatory acts.

123. The defendant exhibited reckless indifference to the plaintiff's civil rights.

**FOURTH COUNT**
**(Failure to Accommodate in Violation of C.G.S. §46a-60(b)(1))**

1. Plaintiff repeats and re-alleges the allegations set forth above in Paragraphs 1 through 123 as though fully set forth herein.

124. Defendant, by and through its agents, servants, and/or employees, violated the Connecticut Fair Employment Practices Act C.G.S. §46a-60a *et seq*. in one or more of the following ways:

(a) In that defendant failed to provide the plaintiff with a reasonable accommodation;

(b) In that defendant denied the plaintiff a reasonable accommodation;

(c) In that defendant failed to initiate an interactive reasonable accommodation process with the plaintiff;

(d) In that defendant failed to engage in an interactive reasonable accommodation process with the plaintiff; and

(e) In that defendant effectively denied a reasonable accommodation by terminating plaintiff while she was actively utilizing a reasonable accommodation.

125. As a direct and proximate result of defendant's failure to accommodate, and termination, plaintiff has been deprived of work and equal employment opportunities because of his disability.

126. As a further direct and proximate result of defendant's failure to accommodate, plaintiff has been deprived of income and wages, and has been deprived of access of certain

benefits to which she was entitled under defendant's employee benefits plan, and interest.

127. As a further result of defendant's failure to accommodate, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of her personal and professional reputation, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and non-pecuniary losses.

128. Plaintiff has suffered and will continue to suffer injuries and losses as a result of defendant's wrongful and discriminatory acts.

## FIFTH COUNT
## (FMLA Discrimination/Retaliation)

1. Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

129. Plaintiff invoked her right to FMLA-qualifying leave.

130. Plaintiff had a serious health condition within the meaning of the FMLA.

131. Defendant, by and through its agents and/or employees, retaliated against the plaintiff for exercising her rights under the FMLA in one or more of the following ways:

(a) by terminating plaintiff's employment;

(b) by using plaintiff's use of the FMLA as a negative factor when evaluating her job performance.

132. As a direct and proximate result of defendant's retaliation/discrimination, plaintiff suffered and sustained harms and losses, including but not limited to: lost wages, lost employee/retirement benefits, and other expenses and financial losses that would not otherwise have been incurred.

133. Defendant's actions have been willful.

**SIXTH COUNT**
**(Interference with the Exercise of Rights under the FMLA)**

1. Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

134. Defendant interfered with plaintiff's rights under the FMLA in one or more of the following ways:

a. by terminating plaintiff's employment;

b. by denying plaintiff intermittent medical leave.

135. As a direct and proximate result of defendant's interference, plaintiff suffered and sustained harms and losses, including but not limited to: lost wages, lost employee and/or retirement benefits, and other expenses and financial losses that would not otherwise have been incurred.

136. Defendant's actions have been willful.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for appropriate damages, including damages for back pay, front pay, compensatory damages, bonuses, personal days, lost pension/retirement benefits, emotional distress, consequential damages, punitive damages, punitive damages pursuant to C.G.S.§46a-104, attorneys' fees, costs, interest; liquidated damages; job re-instatement; post judgment interest, prejudgment interest, for an injunction requiring the removal of all adverse information contained in plaintiff's personnel file; for a trial by jury; and for all just and proper relief.

DATE: December 8, 2020

James Sabatini

James V. Sabatini, Esq.
Fed. No.: CT 19899
SABATINI AND ASSOCIATES, LLC
1 Market Square
Newington, CT 06111
Tel. No.: (860) 667-0839
Fax No.: (860) 667-0867
Email: jsabatini@sabatinilaw.com

ATTORNEY FOR PLAINTIFF

# EXHIBIT 1

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Melissa Sahadi
**COMPLAINANT**

vs.

CHRO No. 2030283
EEOC No. 16A202000310

Citizen's Bank N.A.
**RESPONDENT**

RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

**DATE:** September 16, 2020

Tanya A. Hughes, Executive Director

Service:
Complainant: dahnme@gmail.com
Complainant's attorney: myra@sabatinilaw.com
Respondent: joanne.m.gulbert@citizensbank.com
Respondent's attorney: Beverly.garofalo@jacksonlewis.com

# EXHIBIT 2

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

# DISMISSAL AND NOTICE OF RIGHTS

To: **Melissa Sahadi**
**205 Lucille Street**
**Newington, CT 06111**

From: **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16A-2020-00310** | **Holly M. Shabazz, State & Local Program Manager** | **(929) 506-5316** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other *(briefly state)* **Charging party wishes to pursue matter in Federal District Court.**

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

[signature]

**Judy A. Keenan,**
**District Director**

December 4, 2020
*(Date Mailed)*

Enclosures(s)

cc:

**Attn: Director of Human Resources**
**CITIZEN'S BANK N.A.**
**One Citizens Place**
**Providence, RI 02903**